UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FOXMIND CANADA ENTERPRISES LTD.,

        Plaintiff,

    -v-

APROAT, AVBVCV-direct, AwinnerDirect, Brwvolix Toys Mall, BUYSBDD US, chongyangxianwennianshangmao, Dravilloy, Everyday Good Health, HaiTaiShiDianZi, Highyue, Home Clean Care, KM-BM, KUISANG Co.Ltd, LLESSOO US, Opehuo Toy Store, shanwoww, SIDAN, SOONEEDEAR, tongshanxianbaoxiangdianzishangwuyouxiangongsi, ZaiChi Store, zhangruizhen, ZhiYong, 义乌市焰缙日用百货有限公司 a/k/a Yiwu Yanjin Daily Necessities Co., Ltd. and 别弄·不然弄你店 a/k/a Don't do it, or your store will be ruined,

        Defendants.

---

25-cv-5837 (JSR)

MEMORANDUM

---

JED S. RAKOFF, U.S.D.J.:

On January 8, 2026, after holding a default judgment hearing, the Court entered final judgement in this matter on behalf of plaintiff Foxmind Canada Enterprises Ltd. ("Foxmind") against defaulting defendants Dravilloy and KM-BM. See ECF No. 43. In entering final judgment, the Court determined, inter alia, that service was properly effectuated against defendants Dravilloy and KM-BM. This memorandum sets forth the basis for that conclusion.

1

## I.    <u>Background</u>

Plaintiff Foxmind, a Canadian toy distributor, initiated this action on July 16, 2025. In its complaint, which named twenty-five defendants, all of which are China-based companies that operate online marketplace platforms, Foxmind alleged that defendants were infringing its exclusive rights in the "Pop It" trademark by offering for sale and/or selling counterfeit "Pop It" toys through their respective online merchant storefronts. The complaint alleged causes of action under the Lanham Act and New York state law. Foxmind also sought a TRO, which the Court granted that same day. <u>See</u> ECF No. 15.

Along with its request for a TRO, Foxmind sought an order from the Court authorizing alternative means of service, namely, service by email and website publication. <u>See</u> ECF No. 10. In an accompanying affidavit, Foxmind detailed its attempts to discover physical addresses for each of the defendants, the difficulty of accomplishing service by physical means, and the greater reliability of email service for reaching the defendants named in this action. <u>See</u> Decl. of Melissa J. Levine ("Levine Decl.") ¶¶ 29-45, ECF No. 14. The Court granted the request for alternative service and Foxmind affirmed that it served the defendants on July 22, 2025. <u>See</u> ECF No. 15. On July 28, 2025, the Court held a preliminary injunction hearing. As relevant here, defendants Dravilloy and KM-BM did not appear, and the Court converted the TRO to a preliminary injunction.[1]

---

[1] Counsel for two defendants, Kuisang Co. and Shanwoww, did appear. The Court extended their time to respond to the preliminary

On December 9, 2025, Foxmind moved for default judgment against the remaining defendants, including Dravilloy and KM-BM.[2] The Court set a default judgment hearing for January 5, 2026, and ordered Foxmind to serve defendants with notice of the hearing by the previously authorized means of service, namely by email or website publication. See ECF No. 37.

On December 18, 2026, before the default judgment hearing was held, the Second Circuit decided an issue of significance to this case. It held in Smart Study Co. v. Shenzhenshixindajixieyouxiangongsi, No. 24-313, 2025 WL 3672740 (2d Cir. Dec. 18, 2025), as a matter of first impression, that where the Hague Convention applies, it usually does not permit service by email. As in this case, Smart Study involved service of defendants located in China. In light of Smart Study, the Court asked Foxmind to submit its views on whether service in this case, which was accomplished by email, was valid. See id. at *2 (default judgment may later be deemed void if defendant shows there was insufficient service of process).

In its letter response, Foxmind indicated that, as to the defendants other than Dravilloy and KM-BM, it would initiate service via the Hague Convention's official channels, rather than continue to

---

injunction motion and set a new hearing date. Foxmind subsequently voluntarily dismissed the action as to those two defendants.

[2] On various dates, Foxmind has voluntarily dismissed a number of defendants to this action. No defendant other than Dravilloy or KM-BM is at issue here.

seek default judgment at that time. See Pl.'s Letter re Service at 1, ECF No. 41. With respect to Dravilloy and KM-BM, however, Foxmind argued that the Hague Convention -- and, by extension, Smart Study's prohibition on email service -- did not apply because the addresses of defendants Dravilloy and KM-BM were "not known." Id. at 2. Foxmind therefore asked the Court to find that the alternative means of service previously authorized were validly authorized as to Dravilloy and KM-BM.

On January 8, 2026, the Court held a default judgment hearing, at which it heard further argument on this issue. Neither Dravilloy nor KM-BM appeared. Based on Foxmind's submissions and arguments to the Court and for the reasons set forth below, the Court is satisfied that the Hague Convention does not govern service of defendants Dravilloy and KM-BM and that the Court's previously authorized alternative means of service were therefore effective.

## II.  Discussion

Service of defendants located abroad is governed by Federal Rule of Civil Procedure 4(f). See Burda Media, Inc. v. Viertel, 417 F.3d 292, 299 (2d Cir. 2005). Application of the rule often overlaps with application of the Hague Convention, an international agreement ratified by the United States in 1969, which aimed to "simplify, standardize, and generally improve the process of serving documents abroad." Water Splash, Inc. v. Menon, 581 U.S. 271, 273 (2017). This is so because, among other things, Rule 4(f) provides that foreign defendants may be served "by any internationally agreed means of

service that is reasonably calculated to give notice, such as those authorized by the Hague Convention." Fed. R. Civ. P. 4(f)(1). Indeed, where the Convention applies, service must be accomplished in accordance with its terms. Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 699 (1988). Because China is a signatory to the Hague Convention, service on defendants located in China is generally governed by its terms. See, e.g., Mettera v. Yanfang, No. 24-cv-7911 (JGK), 2024 WL 5036817, at *1 (S.D.N.Y. Nov. 8, 2024).

The Hague Convention authorizes several means of service: "(1) service through the Central Authority of members states; (2) service through consular channels; (3) service by mail if the receiving state does not object; and (4) service pursuant to the internal laws of the state." Burda Media, 417 F.3d at 299. Importantly, these enumerated methods "'create[]' a "closed universe of 'simple and certain means'" for accomplishing service in a foreign country, and "pre-empt[] inconsistent methods of service wherever [the Convention] applies." Smart Study, 2025 WL 3672740, at *4-*5 (first quoting Schlunk, 486 U.S. at 705-06; and then quoting Water Splash, 581 U.S. at 273).

In Smart Study, the Second Circuit concluded that "[e]mail service is one such 'inconsistent method[]' preempted by the Convention." Id. at *5. Thus, where the Hague Convention applies, a defendant may only be served by one of the methods of service enumerated therein; and not by any alternative means, including, as relevant here, by email. Id. at *1.

5

If, however, the Hague Convention does not apply, a party may turn to one of the other methods of service laid out in Rule 4(f)(2) or may pursue "other means" as authorized by the court under Rule 4(f)(3). Id. at *2. The provision for "other means" of service in Rule 4(f)(3) does not, however, function as an "all-encompassing emergency exception," excusing compliance with the Hague Convention in the case of "urgency or exigent circumstances." Id. at *5.[3]

As relevant here, one instance in which the Hague Convention does not apply is when, as set forth in Article I of the Convention, "the address of the person to be served with the document is not known." Id. at *2; see, e.g., S.E.C. v. Lines, 07 Civ. 11387 (DLC), 2009 WL 3179503, at *3 (S.D.N.Y. Oct. 2, 2009). Plaintiff invokes this limitation, arguing based on recent diligence performed by counsel's Beijing office that defendants Dravilloy and KM-BM completed their deregistration procedures in August 2025 and therefore are no longer in operation and have no associated addresses. See Pl.'s Letter re

---

[3] This is distinct from whether the Hague Convention itself permits alternative means of service in cases of urgency under Article 15 of the Convention. See Hague Convention Art. XV ("[A] judge may order, in case of urgency, any provisional or protective measures."); see also, e.g., King Spider LLC v. 884886 CH Store, No. 23-CV-3472 (JMF), 2024 WL 5145837, at *1 (S.D.N.Y. Dec. 17, 2024) (concluding that "Article 15 of the Hague Convention allows alternative methods of service in cases of 'urgency'"); TushBaby, Inc. v. Jinjang Kangbersi Trade Co., Ltd., No. 24-CV-6150 (JMF), 2025 WL 358409, at *2 n.2 (S.D.N.Y. Jan. 31, 2025) (distinguishing between authorizing alternative service under Article 15 of the Hague Convention in connection with a request for preliminary relief and authorizing alternative service under the Hague Convention in general). Plaintiff does not rely on this provision.

Service at 2. Because their addresses are "not known," plaintiff argues, the Hague Convention does not apply, and Rule 4(f)(3) permits service by other means, including by the previously authorized electronic means. See id.

The Court agrees. Courts in this Circuit and in others have concluded that an address is "not known" "if the plaintiff exercised reasonable diligence in attempting to discover a physical address for service of process and was unsuccessful in doing so." Kelly Toys Holdings, LLC v. Top Dep't Store, 22 Civ. 558 (PAE), 2022 WL 3701216, at *6 (S.D.N.Y. Aug. 26, 2022) (citation omitted) (collecting cases). Courts in this district have generally assessed diligence on a case-by-case basis, finding reasonable diligence, and thus an exemption from the Hague Convention, based on a variety of factors. See id. In the case of online businesses, courts have found this standard met when, for example, "the plaintiff searched websites associated with the defendant's domain names, completed internet searches, and attempted to visit the defendant's domicile in person." TushBaby, Inc. v. Jinjang Kangbersi Trade Co., Ltd., No. 24-CV-6150 (JMF), 2025 WL 358409, at *1 (S.D.N.Y. Jan. 31, 2025); see also Orient Plus Int'l Ltd. v. Baosheng Media Grp. Holdings Ltd., 1:24-cv-00744 (JLR), 2024 WL 2317715, *4 (S.D.N.Y. May 22, 2024) (describing attempts to ascertain defendant's address, including by "call[ing] known phone numbers" and "issuing 'subpoenas to the relevant domain registrars and email providers'" (citations omitted)). No specific set of steps, however, are mandatory.

Here, Foxmind has explained that, based on recent diligence, it has determined that defendants Dravilloy and KM-BM have formally deregistered and that no attempts to discover any other associated addresses have been successful. Based on these representations, the Court is satisfied that the addresses of defendants Dravilloy and KM-BM are not only "not known," but are in fact unknowable, given those companies' deregistration in August 2025.[4]

Accordingly, with respect to those defendants, plaintiff is not bound by the Hague Convention. The previously authorized alternative means of service, which comported with Rule 4(f)(3) and was not prohibited by the Hague Convention, was therefore effective as to defendants Dravilloy and KM-BM. See Kelly Toys, 2022 WL 3701216, at *9-*10 (concluding, in a case in which defendant's address was "not known," that email service complied with Rule 4(f)(3) and with constitutional due process).

---

[4] The Court's analysis is unchanged by the fact that, as of July 2025, when service was accomplished, Dravilloy and KM-BM had not yet deregistered and their merchant storefronts at that time "display[ed] addresses that appear[ed] to be accurate." Levine Decl. ¶ 39. First, as plaintiff explained at the time, there was no guarantee that the addresses, even if genuine addresses, were in fact addresses at which defendants could be served. Id. ¶¶ 38, 42. More importantly, as of July, the average time to accomplish Hague service in China was six months. Id. ¶ 40. Given that Dravilloy and KM-BM deregistered in August 2025, making Hague service impossible, initiating Hague service in July 2025 would plainly have been futile. And, were service initiated today, the Hague Convention would not apply. Taken together, the Court concludes that the previously authorized means of alternative service are sufficient to support a grant of default judgment.

## III. <u>Conclusion</u>

For the foregoing reasons, defendants Dravilloy and KM-BM were properly served in this case.

New York, NY
February 13, 2026

JED S. RAKOFF, U.S.D.J.

9